# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

**JOHNATHAN GAFFORD,**

    Plaintiff,

v

**CITY OF GRAND RAPIDS, OFR KYLE WILSON,** individual, **OFR RICHARD JOHNSON,** individual, **CITY OF KENTWOOD, OFR [FNU] BEELEN,** individual, **OFR TIMOTHY DYKGRAAF,** individual, **OFR [FNU] RASMUSSEN,** individual, **OFR [FNU] TABOR,** individual, **JOHN DOE OFFICERS FROM THE GRAND RAPIDS POLICE DEPARTMENT,** individuals, and **JOHN DOE OFFICERS FROM THE KENTWOOD POLICE DEPARTMENT,** individuals, jointly and severally**,**

    Defendants.

Case No.

Hon.

---

**MILLER COHEN, P.L.C.**
Richard G. Mack, Jr. (P58657)
*Attorneys for Plaintiff*
7700 Second Ave, Ste 335
Detroit, Michigan 48203
(313) 964-4454

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

_____*Richard Mack*_____
Richard G. Mack, Jr.

1

NOW COMES Plaintiff Johnathon Gafford, by and through his counsel, MILLER COHEN, P.L.C., with this Complaint and demand for jury trial against Defendants Grand Rapids Police Department, Kentwood Police Department, Officer Kyle Wilson, Officer Richard Johnson, Officer Beelen, John Doe Officers from the Grand Rapids Police Department, and John Doe Officers from the Kentwood Police Department (collectively "Defendants"), in their official and individual capacities, jointly and severally, and for his Complaint, states as follows:

## INTRODUCTION

1. Plaintiff Johnathon Gafford resides outside of the state of Michigan, and was visiting the state in May 2022.

2. Plaintiff Gafford is African-American.

3. On the early morning of May 28, 2022, Plaintiff Gafford was driving a black-colored sports utility vehicle, specifically an Alfa Romero.

4. Defendants noticed Plaintiff Gafford's race that morning and pulled him over.

5. Defendants drew their guns on Plaintiff, handcuffed him, and detained him for more than one hour.

6. Defendants did this to Plaintiff Gafford because of his race.

7. For these reasons, and others discussed herein, Defendants have maintained policies and practices that violated Plaintiff's protections under the U.S.

Constitution, to be free from unreasonable arrest and detention, and Plaintiff's rights under the Fourteenth Amendment of the U.S. Constitution to due process of law and equal protection under the law.

8. As a result of Defendants' actions, Plaintiff has incurred lost wages and consequential damages, as well as emotional distress. Because of the malicious and unwarranted arrest and detention, Plaintiff has faced increasing worry, humiliation, embarrassment, distress, and posttraumatic stress reactions to the mere sight of police officers, and more. Plaintiff seeks damages to compensate him for his losses and to deter future misconduct by Defendants.***

**PARTIES**

9. Plaintiff Johnathon Gafford lives in the City of Beaumont, County of Jefferson, State of Texas. During the date of the incidents giving rise to this Complaint, Plaintiff was in Grand Rapids, Michigan.

10. Defendant Grand Rapids Police Department is a department of a municipal corporation, within Kent County, Michigan.

11. Defendant Kentwood Police Department is a department of a municipal corporation, within Kent County, Michigan.

12. Defendant Kyle Wilson is an individual who, at all times relevant to this action, worked as an Officer of the Grand Rapids Police Department.

3

13. Defendant Richard Johnson is an individual who, at all times relevant to this action, worked as an Officer of the Grand Rapids Police Department.

14. Defendant [FNU] Beelen [Badge Number 2801], is an individual who, at all times relevant to this action, worked as an Officer of the Kentwood Police Department.

15. Defendant Timothy Dykgraaf [Badge Number 2269], is an individual who, at all times relevant to this action, worked as an Officer of the Kentwood Police Department.

16. Defendant [FNU] Rasmussen [Badge Number 2894], is an individual who, at all times relevant to this action, worked as an Officer of the Kentwood Police Department.

17. Defendant [FNU] Tabor [Badge Number 3075], is an individual who, at all times relevant to this action, worked as an Officer of the Kentwood Police Department.

18. Defendants John Doe Officers from the Grand Rapids Police Department are individuals who, at all times relevant to this action, worked as Officers of the Grand Rapids Police Department.

19. Defendants John Doe Officers from the Kentwood Police Department are individuals who, at all times relevant to this action, worked as Officers of the Kentwood Police Department

4

## JURISDICTION AND VENUE

20. This Court has original jurisdiction over Plaintiff's claims arising under 42 U.S.C. § 1983 and the Equal Protection Clause of the U.S. Constitution.

21. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

22. Venue is appropriate in the Western District of Michigan because the events complained of occurred in the Western District. 28 U.S.C. § 1391(b).

23. The amount in controversy exceeds $1,000,000.

## GENERAL ALLEGATIONS

24. Plaintiff fully incorporates all preceding paragraphs.

25. The factual allegations in this Complaint involve officers of Defendant Grand Rapids Police Department and/or Defendant Kentwood Police Department.

26. Plaintiff Gafford is a petroleum inspector and has been for the last sixteen (16) years.

27. On or about May 27, 2022, Plaintiff, an African American male, was visiting Grand Rapids Michigan on business.

28. For his trip that May, Plaintiff rented a black sport utility vehicle (SUV) – specifically an Alpha Romero.

29. After finishing his business on May 27th, Plaintiff went to eat in Kentwood, Michigan.

30. Early morning on May 28th, Plaintiff left the bar to drive back to his hotel room in Grand Rapids.

31. Plaintiff noticed one of Defendants' vehicles tailing him as he drove to his hotel.

32. Plaintiff was tailed by one of Defendants' vehicles for more than five (5) minutes.

33. One of Defendants' vehicles was riding very close to Plaintiff's SUV, appearing to almost hit Plaintiff's SUV.

34. During the time one of Defendants' vehicles was tailing Plaintiff, Defendant's vehicle never put on its sirens.

35. Plaintiff grew very anxious and concerned about Defendants' car following him, worrying that he was being targeted for his race.

36. Plaintiff drove into a nearby convenience store that was open to avoid continuous unwarranted pursuit by one or more of Defendants' vehicles.

37. Plaintiff bought a soda at the convenience store and continued driving to his hotel.

38. Eventually, Plaintiff arrived at his hotel parking lot.

39. Plaintiff noticed a number Defendants' vehicles now following him into the hotel parking lot.

40. Defendants following Plaintiff into the hotel lot had their lights and/or sirens on.

41. Plaintiff parked his car in the hotel parking lot and stayed inside.

42. Plaintiff noticed that his SUV was surrounded by Defendants with their lights flashing and one Defendant with a spotlight fixed on Plaintiff's SUV.

43. Plaintiff noticed that Defendants had exited their vehicles, and had their guns and flashlights pointed at him and his SUV.

44. Defendants kept their guns trained on Plaintiff for several minutes.

45. Plaintiff's anxiety grew into panic and gripping fear for his life.

46. One Defendant ordered Plaintiff to "make himself known".

47. Plaintiff slowly opened the door to his SUV and came out with his hands up.

48. When exiting his vehicle, Plaintiff noticed even more clearly that several Defendants had their guns trained on him.

49. Plaintiff's mind was racing, believing that any sudden movement or verbal expression could result in Defendants shooting him, possibly resulting in death.

50. Plaintiff was very worried that any undesired movement could be his last, and he would be shot and killed by at least one of the several guns trained on him.

51. Plaintiff was ordered to walk backwards toward one of Defendants' vehicles with his hands raised.

52. Plaintiff complied with this order and walked backwards.

53. Plaintiff was ordered to drop to his knees when he approached one of Defendants' vehicles.

54. Plaintiff complied with this order and dropped to his knees.

55. Plaintiff was handcuffed by one of the Defendants.

56. While he was being handcuffed, Plaintiff calmly asked whether he had done anything wrong.

57. Plaintiff's question was not answered at that time.

58. Plaintiff was placed into the back one of Defendants' police cars.

59. Plaintiff was at one point transferred to the back another of Defendants' police cars.

60. Plaintiff was held for nearly one (1) hour by Defendants, all while in handcuffs.

61. Eventually, the Defendants explained to Plaintiff that he matched the description of a suspect for breaking and entering in the area.

62. The criminal activity that Defendants were investigating was not violent in nature.

63. Plaintiff never presented a threat to Defendants or anyone else that evening.

64. Plaintiff never sought to flee and complied with every order directed at him by Defendants.

65. None of the Defendants believed that Plaintiff had a prior criminal record or other characteristic suggesting that Plaintiff posed a threat to Defendants or others.

66. Thus, Defendants' decision to point multiple firearms at Plaintiff for several minutes was unreasonable and excessive.

67. The rights enjoyed by Plaintiff against the behavior by the Defendants were clearly established in the law.

68. After facing guns being drawn on him, forced to his knees, handcuffed, and detained for nearly one hour, Plaintiff Gafford was released.

69. Defendants had no probable cause to arrest or otherwise detain Plaintiff.

70. Defendants had no justification for handcuffing Plaintiff.

71. Defendants were not engaged in activity within the scope of their authority, nor were Defendants acting reasonably in believing their actions to be within the scope of their authority.

72. Defendants acted not in good faith, but instead with malice and intent to do Plaintiff harm, without a proper purpose in their actions.

73. Defendants acted with intent to harm Plaintiff and deny his rights, or with reckless disregard for the welfare and rights of Plaintiff, at minimum.

74. Defendants had the opportunity and capacity to avoid their wrongful conduct.

75. Defendants' actions were not the exercise of a government function.

76. As a direct and proximate cause of Defendants' conduct, Plaintiff has been injured emotionally, including mental distress, humiliation, embarrassment, and among other harms.

77. Plaintiff – who has friends and acquaintances in law enforcement - continues to suffer from posttraumatic stress at the mere sight of police officers, and often wakes up sweating from the thought of Defendants' actions.

## COUNT I

### CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 –
### Fourth Amendment, Fourteenth Amendment

78. Plaintiff fully incorporates all preceding paragraphs.

79. Plaintiff, under the United States constitution, is guaranteed protection against their persons being subjected to excessive force and from unreasonable searches and seizures, as well as due process and equal protection under the law.

80. Plaintiff was followed, pulled over, arrested with the use of deadly force from multiple police officers, and detained without probable or reasonable cause by Defendants.

81. Defendants lacked an objective, good faith or reasonable belief that Plaintiff was guilty of the offense for which he was investigated. These actions were without any lawful basis.

82. Defendants lacked a reasonable basis to believe that Plaintiff posed any threat to Defendants or the general public.

83. Plaintiff never resisted any of Defendants' commands.

84. Plaintiff never took any action to suggest that he was going to resist arrest or otherwise would evade Defendants' commands.

85. Defendants acted with deliberate indifference in ignoring readily accessible evidence which would have exculpated the Plaintiff prior to his arrest, handcuffing and detention.

86. Defendants sought and achieved the unwarranted threat of deadly force from multiple officers, arrest and detention against Plaintiff.

87. Defendants were acting under color of law and were required to honor Plaintiff's constitutional rights.

88. Defendants acted illegally and without justification in following Plaintiff's car.

89. Defendants violated Plaintiff's rights by engaging in excessive force, by the actions listed above and circumstances occurring on May 28, 2022.

90. Defendants violated Plaintiff's rights by engaging in an unlawful and unreasonable search and seizure, by the actions listed above and circumstances occurring on that date.

91. Defendants' actions constituted excessive force in a manner that violated Plaintiff's constitutional rights.

92. Plaintiff is an African-American male, and Defendants were aware of his race at the time they violated his rights as enumerated above.

93. Plaintiff faced the above treatment because of his race.

94. As a proximate result of Defendants' actions and unconstitutional conduct, Plaintiff suffered emotional damages.

95. Plaintiff's arrest was in violation of his rights under the Fourth Amendment under the U.S. Constitution, to be free from unreasonable arrest and in violation of his rights under the Fourteenth Amendment of the U.S. Constitution to due process of law and equal protection under the law.

## COUNT II
### CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 – Defendants Grand Rapids and Kentwood

96. Plaintiff fully incorporates all preceding paragraphs.

97. The City of Grand Rapids and City of Kentwood have policies and practices, and/or customs which resulted in the harms that Plaintiff suffered in the instant case.

98. Both cities promote policies or practices which foster the treatment which Plaintiff criticizes in this Complaint.

99. The City of Grand Rapids has faced public criticism and exposure of many of its practices of engaging excessive force against victims, especially those who are African-American males.

100. One study reported in April 2017 that African-American drivers were more than twice as likely to be stopped by the police department.

101. The Michigan Civil Rights Department has been investigating race discrimination within the Grand Rapids Police Department for years.

102. As recently as December 2022, the Michigan Department of Civil Rights (MDCR) conducted investigations against the Grand Rapids Police Department, concluding that two minor victims were treated unfairly based on race. In that instance, MDCR found that the Police Department stopped two eleven (11) year old boys, searching, questioning, and handcuffing them both. Despite being compliant to with all officer commands, the boys were held at gunpoint by multiple officers, including one using a high-powered rifle. The boys were released after being detained for about twenty (20) minutes, which included

being placed in a squad car.  The police officers were initially called to the scene because of reports of two boys walking with a toy gun.[1]

103.   What happened to these minor children is very similar to what occurred to Plaintiff in this instance; exposing the pattern and practice that exists within the Police Department.

104.   The MDCR has launched other investigations against the Grand Rapids Police Department for similar behavior; which includes arresting and detaining Black victims, and holding them at gun point.[2]

105.   As of July 2022, about twenty-eight (28) investigations of discrimination against the Grand Rapids Police Department were ongoing.[3]

## COUNT III
## ASSAULT AND BATTERY

106.   Plaintiff fully incorporates all preceding paragraphs.

107.   Defendants unjustifiably threatened Plaintiff with deadly force, with multiple guns pointed at him by multiple police officers.

108.   Defendants engaged in an intentional and unlawful offer of corporal injury upon Plaintiff.

---

[1] https://www.michigan.gov/mdcr/news/releases/2022/12/14/mdcr-charges-grpd
[2] https://www.michigan.gov/mdcr/news/releases/2022/07/25/mdcr-files-charges-in-two-discrimination-complaints-against-the-grand-rapids-police-department
[3] https://www.wzzm13.com/article/news/crime/racial-discrimination-complaints-grand-rapids-police-department/69-fec0784b-d4f6-4906-8c50-4c9072fdfc65

109. Plaintiff experiences a well-founded apprehension that he would face imminent, deadly contact.

110. Defendants had actual and readily apparent ability to inflict imminent, deadly contact upon Plaintiff.

111. Defendants inflicted willful and offensive touching on Plaintiff by handcuffing him.

112. Defendants intended to inflict such harm on Plaintiff.

113. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages, including, but not limited to, emotional trauma with physical manifestations, anxiety, humiliation, indignity, disgrace, fright, shame, mortification, injury to Plaintiff's feelings and reputation, other mental and physical suffering and injury, and, he has incurred medical expenses, pain, suffering and loss of enjoyment of life.

## COUNT III
## FALSE ARREST

114. Plaintiff fully incorporates all preceding paragraphs.

115. On May 28, 2022, Plaintiff was unjustifiably arrested and detained for approximately one hour, in the back of multiple police vehicles.

116. Defendants secured Plaintiff's arrest even though they knew, or reasonably should have known, that Plaintiff was innocent or there was a strong enough question of guilt to check easily accessible exculpating evidence.

15

117. At the time of Plaintiff's arrest, Defendants lacked probable cause for the arrest and detention.

118. As a result of his arrest, Plaintiff suffered emotional trauma with physical manifestations.

119. Plaintiff was arrested and detained against his will and without justification or reasonable cause, depriving him of his personal liberty and freedom of movement, all with the intent of confining him.

120. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages, including, but not limited to, emotional trauma with physical manifestations, anxiety, humiliation, indignity, disgrace, fright, shame, mortification, injury to Plaintiff's feelings and reputation, other mental and physical suffering and injury, and, he has incurred medical expenses, pain, suffering and loss of enjoyment of life.

## COUNT IV
## FALSE IMPRISONMENT

121. Plaintiff fully incorporates all preceding paragraphs.

122. Defendants intended to confine Plaintiff in the back of multiple police cars on the evening of May 28, 2022.

123. Plaintiff was confined when he was arrested at gun point, handcuffed and placed in Defendants' vehicles for approximately one hour.

124. While arrested and detained, Plaintiff was conscious and aware of his confinement, which caused him severe emotional distress.

125. Defendants did not have probable cause to restrain, detain, or imprison Plaintiff against his will.

126. Defendants' actions were fraudulent, oppressive and motivated by malice, discrimination and ill intent.

127. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages, including, but not limited to, emotional trauma with physical manifestations, anxiety, humiliation, indignity, disgrace, fright, shame, mortification, injury to Plaintiff's feelings and reputation, other mental and physical suffering and injury, and, he has incurred medical expenses, pain, suffering and loss of enjoyment of life.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

128. Plaintiff fully incorporates all preceding paragraphs.

129. Defendants' conduct as described herein was extreme, outrageous and not to be tolerated by society.

130. Defendants' conduct as described herein was intentional or reckless.

131. Defendants' conduct as described herein resulted in severe emotional distress to Plaintiff.

132. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages, including, but not limited to, emotional trauma with physical manifestations, anxiety, humiliation, indignity, disgrace, fright, shame, mortification, injury to Plaintiff's feelings and reputation, other mental and physical suffering and injury, and, he has incurred medical expenses, pain, suffering and loss of enjoyment of life.

## COUNT VI
## GROSS NEGLIGENCE

133. Plaintiff fully incorporates all preceding paragraphs.

134. Defendants owed duties of care toward Plaintiff.

135. These duties of care owed to Plaintiff is encompassed in their obligation to properly identify a suspect before making an arrest, at gun point, and elongated detention while in handcuffs.

136. These duties of care require Defendants to know the elements of the crime with which a suspect is being, and to make an arrest of a suspect utilizing the proper crime.

137. These duties of care require Defendants to receive and act upon evidence of a suspect's purported involvement in a crime in a timely fashion. Defendants must also thoroughly investigate an allegation of criminal activity faced by a suspect, including reviewing evidence (such as video recording) themselves and taking possession and preserving relevant evidence.

138. Defendants breached the above-listed duties of care by following, arresting at gun point, handcuffing and detaining Plaintiff, without thorough investigation.

139. Defendants' breach of their duties of care to Plaintiff was the proximate cause of Plaintiff's injuries as alleged in this lawsuit.

140. By their actions, Defendants and the other officers are not entitled to any statutory governmental immunity.

141. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages, including, but not limited to, emotional trauma with physical manifestations, anxiety, humiliation, indignity, disgrace, fright, shame, mortification, injury to Plaintiff's feelings and reputation, other mental and physical suffering and injury, and, he has incurred medical expenses, pain, suffering and loss of enjoyment of life.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendants, requesting joint and several liability for all Defendants and claims, in an amount the trier of fact determines fully and fairly compensates in excess of $1,000,000, plus exemplary damages, compensatory damages, punitive damages, interest, costs, and attorney fees, and all other relief available under law.

                    Respectfully submitted,

                    **MILLER COHEN, P.L.C.**

                    By: /s/ *Richard Mack*

                        Richard G. Mack (P58657)
                        *Attorneys for Plaintiff*
                        7700 Second Ave, Ste 335
                        Detroit, MI 48202
Date: May 26, 2023           (313) 964-4454

## DEMAND FOR JURY TRIAL

Plaintiff hereby makes a demand for jury trial for all issues so triable.

                    Respectfully submitted,

                    **MILLER COHEN, P.L.C.**

                    By: /s/ *Richard Mack*

                        Richard G. Mack (P58657)
                        *Attorneys for Plaintiff*
                        7700 Second Ave, Ste 335
                        Detroit, MI 48202
Date: May 26, 2023           (313) 964-4454